GEORGE C. PRATT, Circuit Judge:
 

 FACTS AND BACKGROUND
 

 In June 1989 the New York Drug Enforcement Task Force (“task force”) began an investigation of the drug-trafficking activities of Adolfo Crespo, Doris Lasanta, Luis Rivera, Juan. Cardona, and Eladio Gonzalez. After indictment, and as part of a plea agreement, Adolfo Crespo and his common-law wife, Doris Lasanta, agreed to
 
 *1303
 
 testify against the three remaining defendants. A seven-day trial resulted in convictions for all three.
 

 Juan Cardona was convicted of conspiring to distribute and possess with intent to distribute an amount in excess of five hundred grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(l)(B)(ii)(II). He was sentenced to 60 months’ imprisonment, 5 years’ supervised release, and a $50 special assessment.
 

 Eladio Gonzalez was convicted of both heroin and cocaine conspiracies, see 21 U.S.C. § 846; seven counts of distributing heroin, see 21 U.S.C. § 841; bribing a public official in violation of 18 U.S.C. § 201(b)(1)(C); and carrying a firearm during and in relation to a drug-trafficking crime, see 18 U.S.C. § 924(c). He was sentenced to 188 months’ imprisonment on the drug and bribery convictions, a consecutive term of 60 months’ imprisonment on the gun conviction, 5 years’ supervised release, and a $550 special assessment.
 

 Luis Rivera was convicted of distributing heroin and conspiring to distribute and possess with intent to distribute an amount in excess of five hundred grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and 841(b)(l)(B)(ii)(II). He was sentenced to 97 months’ imprisonment, 5 years’ supervised release, and a $100 special assessment.
 

 The numerous issues presented for our review include challenges to the district court’s admission of certain prior-act evidence and attacks on the sufficiency of the evidence underlying several of the convictions. Cardona challenges the constitutionality of the government’s civil forfeiture of his vehicle. Gonzalez claims he is entitled to be resentenced.
 

 Additional facts are presented with the specific issues. For the reasons set forth below, we reverse Gonzalez’s conviction under 18 U.S.C. § 924(c), but otherwise affirm as to each appellant.
 

 DISCUSSION
 

 I.
 
 Cardona
 

 Cardona raises two objections to his conviction on one count of conspiracy to distribute cocaine,
 
 see
 
 21 U.S.C. §§ 846 and 841(b)(l)(B)(ii)(II).
 

 A. Evidence Resulting From Warrant-less Vehicle Seizure Should Have Been Excluded.
 

 Juan Cardona was arrested pursuant to an arrest warrant between 6 and 7 a.m. on August 20, 1990. A professional livery driver, Cardona possessed a Lincoln Continental stretch limousine, which he kept parked in the driveway of his home in Brooklyn, New York. After placing Cardo-na in custody, the arresting agents asked him for his car keys and, under the purported authority of the civil forfeiture statute, 21 U.S.C. § 881(a), seized the limousine from the driveway of Cardona’s house. Apparently, the agents intended all along to seize the car, but they made no attempt to obtain a warrant for that purpose. They seized Cardona’s car, as well as the cars of the other defendants, on the assumptions that merely having probable cause to believe it was used in connection with narcotics trafficking was sufficient under the forfeiture statute to authorize seizure and that no warrant was required.
 

 Cardona objects to the admission of evidence of cocaine found in a small canister discovered by the agents’ dog underneath the driver’s seat of the limousine. He argues that this fruit of the warrantless seizure should have been suppressed.
 

 A threshold question presented here is whether the government’s seizure of the car, without a warrant, as a civil forfeiture, was authorized. The forfeiture statute, 21 U.S.C. § 881, gives power to the attorney general to seize for forfeiture,
 
 inter alia,
 
 a vehicle that is used to facilitate a narcotics transaction. In carrying out such a statutorily authorized seizure, however, agents of the attorney general must also obey the constitution, particularly the fourth amendment’s command that there be no unreasonable seizures.
 

 Section 881(a) provides for forfeiture of conveyances in the following circumstances:
 

 
 *1304
 
 The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 

 (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
 

 * * *
 

 (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph * # *
 

 21 U.S.C. § 881(a).
 

 The government relies on 21 U.S.C. § 881(b)(4) to support the warrantless seizure of Cardona’s vehicle; the provision permits the attorney general to seize “[a]ny property subject to forfeiture” without process when he “has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter”.
 
 Id.
 
 The attorney general claims to have had probable cause to believe Cardona’s vehicle was used “to transport, or * * * to facilitate the transportation, sale, receipt, possession, or concealment of” controlled substances. 21 U.S.C. § 881(a).
 

 The government disclaims the need to justify its warrantless seizure of Cardona’s limousine with any of the traditional exceptions to the fourth amendment’s warrant requirement. It contends that the plain language of the civil forfeiture statute absolves it of any responsibility to obtain a warrant in executing seizures of property used in connection with controlled-substance transactions. The government argues that the forfeiture statute represents congress’s decision to create a new exception to the fourth amendment’s warrant requirement. In essence, it argues that congress has amended the constitution. To state the position is to refute it, because congress cannot authorize by legislation what the constitution forbids.
 
 Marbury v. Madison,
 
 5 U.S. 87, 1 Cranch 137, 2 L.Ed. 60 (1803);
 
 see also Almeida-Sanchez v. United States,
 
 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973) (“no act of Congress can authorize a violation of the constitution”).
 

 This statutory-forfeiture language has been the subject of a fair number of decisions among the circuits. Many circuits have upheld warrantless seizures even in the absence of the traditional exceptions to the warrant requirement.
 
 See, e.g., United States v. Pace,
 
 898 F.2d 1218, 1242 (7th Cir.) (analogizing warrantless seizure of vehicle to warrantless, public seizure of felon), ce
 
 rt. denied,
 
 497 U.S. 1030, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990);
 
 United States v. Valdes,
 
 876 F.2d 1554, 1557 (11th Cir.1989) (rejecting argument that proper construction of § 881(b)(4) would obligate agents to obtain seizure warrant before seizing automobile);
 
 United States v. One 1978 Mercedes Benz,
 
 711 F.2d 1297, 1302 (5th Cir.1983) (statute does not place any exigent-circumstances requirement on warrantless seizure supported by probable cause);
 
 United States v. Bush,
 
 647 F.2d 357, 368 (3d. Cir.1981) (plain language of statute renders warrantless seizure of vehicle on public street constitutional). Other circuits have required at least exigent circumstances in order to reconcile these statutory seizures with the fourth amendment.
 
 See, e.g., In re Warrant to Seize One 1988 Chevrolet Monte Carlo,
 
 861 F.2d 307, 311 (1st Cir.1988) (noting the continuing vitality of
 
 United States v. Pappas,
 
 613 F.2d 324 (1st Cir.1979) (en banc), a case that required exigent circumstances for valid, warrantless forfeiture);
 
 United States v. Linn,
 
 880 F.2d 209, 215 (9th Cir.1989) (forfeiture seizures must adhere to fourth amendment’s warrant requirement or fall within an exception).
 

 The government urges us to rule that the civil-forfeiture statute represents congress’s considered exemption of the executive branch from the strictures of the fourth amendment; and that the war on drugs justifies a ruling that courts must deem warrantless seizures constitutionally adequate even when they are grounded solely on the attorney general’s affirmation that probable cause existed to believe the property was used in connection with the
 
 *1305
 
 facilitation of transactions in narcotics,
 
 see
 
 21 U.S.C. § 881(b)(4).
 

 We find no language in the fourth amendment suggesting that the right of the people to be secure in their “persons, houses, papers, and effects” applies to all searches and seizures' except civil-forfeiture seizures in drug cases. U.S. Const. amend. IV. We reject out of hand the government’s argument that congress can conclusively determine the reasonableness of these warrantless seizures, and thereby eliminate the judiciary’s role in that task of constitutional construction.
 
 See
 
 U.S. Const. art. VI, cl. 2. While congress may have intended civil forfeiture to be a “powerful weapon in the war on drugs”,
 
 United States v. 141st Street Corp. by Hersh,
 
 911 F.2d 870, 878 (2d Cir.1990) (noting statute’s legislative history),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991), it would, indeed, be a Pyrrhic victory for the country, if the government’s relentless and imaginative use of that weapon were to leave the constitution itself a casualty.
 

 This court has not hesitated to affirm that the government’s efforts to forfeit property must comport with constitutional standards.
 
 See, e.g., United States v. Premises and Real Property at 4492 S. Livonia Rd.,
 
 889 F.2d 1258 (2d Cir.1989) (defining requirements of due process in real property forfeiture);
 
 141st Street,
 
 911 F.2d at 881 (eighth amendment may apply to certain forfeitures). The Supreme Court has done likewise.
 
 See, e.g., One 1958 Plymouth Sedan v. Pennsylvania,
 
 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965) (evidence derived from search in violation of fourth amendment is inadmissible in a civil-forfeiture proceeding);
 
 Boyd v. United States,
 
 116 U.S. 616, 622, 6 S.Ct. 524, 527, 29 L.Ed. 746 (1886) (fourth-amendment protections apply in civil-forfeiture proceeding). In short, the fourth amendment always stands as a limit on legislative and executive action.
 

 To be valid, therefore, this warrant-less seizure must meet one of the recognized exceptions to the fourth amendment’s warrant requirement.
 
 Coolidge v. New Hampshire,
 
 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). Surely the government cannot argue that the canister, tucked underneath the driver’s seat, was found in the plain view of an investigative officer in a place she was entitled to be.
 
 See, e.g., Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (explaining the elements of a plain-view seizure). Nor does the government claim that the search was incident to Car-dona’s arrest, which occurred on the doorstep of Cardona’s home.
 
 See, e.g., Chimel v. California,
 
 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2039-40, 23 L.Ed.2d 685 (1969) (police may search arrestee’s person and area within his immediate control incident to arrest). The substantial distance between the site of Cardona’s arrest and the vehicle in the driveway forecloses any question of the agents’ need to search the vehicle for weapons to ensure their safety during the arrest.
 
 Chimel, 395 U.S.
 
 at 763, 89 S.Ct. at 2040 (noting that safety animates this seizure rationale).
 

 The government does not even suggest that exigent circumstances might justify its warrantless seizure of the vehicle.
 
 See, e.g., Chambers v. Maroney,
 
 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (outlining the automobile exception to the warrant requirement);
 
 Carroll v. United States,
 
 267 U.S. 132, 146, 45 S.Ct. 280, 282, 69 L.Ed. 543 (1925) (noting rationale of automobile exception). Investigative agents could have held no realistic concern that the car, parked not in a public thoroughfare, but in Cardona’s private driveway, might be removed and any evidence within it destroyed in the time a warrant could be obtained. Cardona was not operating the vehicle, nor was he in it or even next to it; when the agents knocked on his door to arrest him, he was inside his house, asleep.
 

 Nor was it impractical for the agents to obtain a warrant to seize Cardona’s car.
 
 See, e.g., United States v. Paroutian,
 
 299 F.2d 486, 488 (2d Cir.1962) (search upheld when exceptional circumstances rendered it impractical to secure warrant). Previous surveillance had made agents aware of the vehicle’s presence, thus enabling them to
 
 *1306
 
 have requested and obtained a search warrant during either of their two attempts to secure a warrant to arrest Cardona. Even if the agents had been surprised by the presence of the limousine, and even if they harbored probable cause to suspect it contained evidence of narcotics-related activity, they still could have posted an agent to remain with the vehicle, and then secured a search warrant.
 

 In sum, the government needed a warrant to seize Cardona’s limousine, but did not obtain one. Its unconstitutional seizure of the car rendered its subsequent inventory search invalid.
 
 United States v. Jenkins,
 
 876 F.2d 1085, 1089 (2d Cir.1989) (per curiam) (“before an inventory search is permissible, the government must have legitimate custody of the property to be inventoried”). Thus, the cocaine-dusted canister discovered during the inventory search should have been suppressed as “fruit of the poisonous tree”.
 
 See Weeks v. United States,
 
 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (evidence derived from unconstitutional seizure must be suppressed and cannot be used at trial);
 
 Nix v. Williams,
 
 467 U.S. 431, 441-48, 104 S.Ct. 2501, 2507-11, 81 L.Ed.2d 377 (1984) (describing history of exclusionary rule).
 

 Despite the erroneous admission of the evidence of cocaine in the canister discovered in Cardona’s illegally seized vehicle, we affirm Cardona’s conviction, because admission of the evidence was harmless error.
 
 See, e.g., United States v. Berenguer,
 
 562 F.2d 206, 211 (2d Cir.1977) (affirming conviction despite introduction of illegally seized evidence, as other evidence of defendant’s guilt was overwhelming);
 
 Chapman v. California,
 
 386 U.S. 18, 21-24, 87 S.Ct. 824, 826-28, 17 L.Ed.2d 705 (1967) (elucidating harmless-error doctrine).
 

 The government’s case against Cardona consisted of numerous wiretapped conversations; the testimony of two accomplice witnesses, Adolfo Crespo and Doris Lasan-ta; and the surveillance testimony of members of the task force. This evidence established overwhelmingly, as the jury found, that Cardona had conspired with Crespo, Gonzalez, and Rivera to purchase and sell substantial quantities of cocaine on several occasions. In particular, a number of the recorded conversations, as well as portions of the testimony of Crespo and Lasanta, established Cardona’s efforts to arrange for Eladio Gonzalez to purchase a kilo of cocaine for $23,000, Since this evidence overwhelmingly tied Cardona to the conspiracy, introduction of the cocaine residue found in the canister was harmless beyond a reasonable doubt as to him. We therefore affirm Cardona’s conviction on conspiracy to distribute cocaine.-
 

 B. Prejudicial Spillover Claim
 

 Cardona argues that his trial on the sole charge of conspiring to distribute cocaine was prejudiced by the voluminous evidence introduced against his co-defendants to prove the heroin-distribution, bribery, and gun-possession charges. Cardona contends that the district court should have granted his motion for a mistrial and a severance based on prejudicial spillover.
 

 The decision whether to sever multi-defendant trials is committed to the sound discretion of the trial court and is “virtually unreviewable.”
 
 United States v. Cardascia,
 
 951 F.2d 474, 482 (2d Cir.1991). To succeed, Cardona must show that he was so severely prejudiced by the spillover evidence that the joint trial constituted a miscarriage of justice.
 
 United States v. Cervone,
 
 907 F.2d 332, 341 (2d Cir.1990),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991);
 
 see also United States v. Serpoosh,
 
 919 F.2d 835, 837 (2d Cir.1990) (decision to deny severance is “virtually unreviewable” because defendant “must show prejudice so severe as to amount to a denial of a constitutionally fair trial”). The court in
 
 United States v. Villegas,
 
 899 F.2d 1324, 1347 (2d Cir.),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990), listed factors relevant to determining if severance should have occurred:
 

 We will consider, for example, to what extent the evidence presented at the joint trial would have been admitted at a single-defendant trial because of the alleged conspiratorial nature of the illegal activity. * * *. We will also consider wheth
 
 *1307
 
 er the jury was instructed to assess the evidence against each defendant separately from the proof against the other defendants * * *, and
 
 whether there is an indication, such as different verdicts with respect to different defendants, that the jury heeded these instructions
 
 * * *. No one of these factors is dispositive.
 

 Id.
 
 (emphasis added) (citations omitted).
 

 There was no abuse of discretion here. The district court countered any possible spillover with specific instructions to the jury, repeating no less than eight times that the jury should consider the evidence separately against each defendant and that Cardona was charged with one and only one crime: conspiring to distribute cocaine. During deliberations the jury revealed no confusion, and it answered without contradiction the specific questions put to it on a fairly complicated form of verdicts. These circumstances mandate rejection of this claim.
 
 See Cardascia,
 
 951 F.2d at 484 (denial of motion to sever trial upheld where jury instructions guarded against spillover and jury’s conduct in deliberations indicated adherence to instructions).
 

 II.
 
 Gonzalez
 

 A. Prior-act Evidence.
 

 Cardona and Gonzalez jointly challenge the district court’s admission of testimony by government-witness Crespo concerning his involvement with the two defendants in drug transactions several years prior to the commencement of the conspiracy. Crespo testified that three to six years prior to June 1, 1989, he had bought drugs from and sold them to Gonzalez. He also testified that he and Cardona had engaged in drug transactions one to two years before the beginning of the conspiracy. Defendants claim that the court abused its discretion under Fed.R.Evid. 403 and 404(b) by letting in this testimony that unfairly prejudiced them by leading the jury to imper-missibly draw conclusions about their propensity to engage in a narcotics conspiracy.
 

 While the rules of evidence do not permit introduction of evidence to demonstrate propensity to commit a crime, there are many permissible uses of prior-act testimony. We follow the “inclusionary approach” to the admission of prior-act evidence. “Under the ‘inclusionary’ approach * * *, ‘evidence of prior crimes, wrongs, or acts is admissible for
 
 any
 
 purpose other than to show a defendant’s criminal propensity.’ ”
 
 United States v. Brennan,
 
 798 F.2d 581, 589 (2d Cir.1986) (quoting
 
 United States v. Harris,
 
 733 F.2d 994, 1006 (2d Cir.1984)),
 
 cert. denied,
 
 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989) (emphasis added).
 
 See also United States v. Ortiz,
 
 857 F.2d 900, 903 (2d Cir.1988) (noting that inclusionary approach governs in this circuit),
 
 cert. denied,
 
 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989);
 
 United States v. Levy,
 
 731 F.2d 997, 1002 (2d Cir.1984) (citing
 
 United States v. O’Connor,
 
 580 F.2d 38, 40 (2d Cir.1978)) (same).
 

 Our decisions specifically approve the use of evidence of a defendant’s prior narcotics dealings to delineate the background details of a conspiracy — to “inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.”
 
 United States v. Pitre,
 
 960 F.2d 1112, 1119 (2d Cir.1992).
 
 See also United States v. Roldan-Zapata,
 
 916 F.2d 795, 804 (2d Cir.1990) (“The pre-existing drug-trafficking relationship between [the co-conspirators] furthered the jury’s understanding of how the instant transaction came about and their role in it”),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991);
 
 Brennan,
 
 798 F.2d at 589 (prior-act evidence relevant to explain racketeers’ relationship).
 

 Evidence about Gonzalez’s and Cardona’s drug-dealing-activity with Crespo and La-santa explained how the co-conspirators came to interact with each other, and it rendered more plausible their joint participation in the heroin and cocaine conspiracies charged in the indictment. Such evidence “show[ed] to the jury how [their] illegal relationship developed”, “inform[ed] the jury of the background to the charged
 
 *1308
 
 conspiracpes,]” and “show[ed] the basis for [each] defendant’s trust” of the others.
 
 Brennan,
 
 798 F.2d at 589-90.
 

 Finally, on this point, the district court expressly determined under Fed.R.Evid. 403 that the probative value of the evidence was not substantially outweighed by its prejudicial effect, and it gave an appropriate limiting instruction. We find no abuse of discretion' in the court’s handling of this evidence.
 

 B. Sufficiency of the Evidence
 

 Gonzalez challenges the sufficiency of the evidence to support two of his convictions — bribery of a public official,
 
 see
 
 18 U.S.C. § 201(b)(1)(C), and carrying a weapon during and in relation to a drug-trafficking crime, 18 U.S.C. § 924(c) — both of which arose out of an incident on April 1, 1990.
 

 In challenging the sufficiency of the evidence to support these convictions, Gonzalez bears a heavy burden.
 
 United States v. Medina,
 
 944 F.2d 60, 66 (2d Cir.1991), ce
 
 rt. denied,
 
 — U.S. —, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992). We must view all evidence in the light most favorable to the government,
 
 see United States v. Stanley,
 
 928 F.2d 575, 576 (2d Cir.),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991), and credit every inference that could have been drawn in its favor.
 
 United States v. Macklin,
 
 927 F.2d 1272, 1277 (2d Cir.),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991). We must affirm the conviction if, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt.
 
 United States v. Buck,
 
 804 F.2d 239, 242 (2d Cir.1986).
 

 1.
 
 Drug-Related Gun Possession
 

 Gonzalez was convicted under 18 U.S.C. § 924(c) of carrying a firearm during and in relation to a drug-trafficking crime. The jury found that Gonzalez possessed a loaded revolver on April 1, 1990, immediately after a narcotics-related meeting with Jose Rosario, during the course of the heroin and cocaine conspiracies charged in counts one and nine of the indictment. Gonzalez contends the evidence was insufficient to establish that he carried the weapon while engaged in drug-related activity.
 

 On April 1, 1990 — over four months before his arrest'on August 19 — two agents following Gonzalez noted his surveillance-conscious manner of driving while he was en route to the apartment building of Rosario, an uncharged co-conspirator who, testimony showed, was connected to drug activity with Gonzalez. Gonzalez entered the apartment building; soon thereafter, Rosario followed, carrying a bag, A short time later, Gonzalez left the building, entered his car, and drove erratically and dangerously until the agents pulled him over. The agents recovered a loaded revolver from the driver’s side door of Gonzalez’s car, and a fistful of United States currency amounting to $2,376 which he kept stuffed insidé his jacket pocket.
 

 There is insufficient evidence to conclude that at the time of Gonzalez’s arrest, he was involved in specific drug-related activity, and that he “used” the gun “during and in relation to a drug transaction” under 18 U.S.C. § 924(c)(1).
 

 The gun-drug nexus presented here is insufficient; our cases construing § 924(c)(1) contemplate more evidence than is here to connect the gun to the drug transactions.
 
 See, e.g., United States v. Feliz-Cordero,
 
 859 F.2d 250, 254 (2d Cir.1988) (finding insufficient evidence to-conclude that gun in dresser drawer with defendants’ drug paraphernalia was placed for ready use during a drug transaction).
 

 In two cases in which a drug conspiracy served as the predicate drug-trafficking offense, the weapon was found on premises that clearly served as an operations base for narcotics transactions.
 
 United States v. Torres,
 
 901 F.2d 205, 218 (2d Cir.) (gun “used” in drug offense when found in apartment stashed with heroin, bulletproof vests, gold, drug records and other items used in narcotics trafficking);
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990);
 
 United States v. Meggett,
 
 875 F.2d 24, 29 (2d Cir.) (five loaded
 
 *1309
 
 firearms protected apartment that was storage and processing point for large quantities of narcotics),
 
 cert. denied,
 
 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989). The agents found no drugs despite their thorough search of the inside of the car, trunk, and Gonzalez’s person. Although he carried currency, the fact that he did not have drugs suggests he had not recently bought them from Rosario. Perhaps he had recently sold drugs to Rosario, or picked up the money from him in order to buy drugs, but that is surely speculation on this record. The only thing we know is his involvement in heroin and cocaine conspiracies from June 1, 1989, to August 15, 1990. In order to sustain this conviction, which added five years to Gonzalez’s 188-month sentence, we would have to conclude that any time a conspirator carried a gun during the course of a conspiracy, he or she violated this provision. We are not prepared to do so.
 

 2.
 
 The Bribery Conviction
 

 During the April 1, 1990, stop of his vehicle, Gonzalez offered over $2,000 in cash to the agents in an effort to convince them not to seize the weapon. For this he was convicted of offering a bribe to a public official in violation of 18 U.S.C. § 201(b)(1)(C).
 

 Section 201(b)(1)(C) requires proof that the defendant intended to influence a public official to do or to omit to do something in violation of his lawful duty. Gonzalez argues that the evidence at trial does not support his intention to offer a bribe, because he “never expected to get his gun back * * * [but] offered the money to the detectives only for the purpose of being left alone”. The latter motive would support a conviction of the lesser-included offense of giving an illegal gratuity,
 
 see
 
 18 U.S.C. § 201(c), but would be insufficient for bribery.
 
 See, e.g., United States v. Muldoon,
 
 931 F.2d 282, 287 (4th Cir.1991) (explaining “corruption” element by distinguishing bribery from the mere giving of an illegal gratuity).
 

 Presented here is a classic jury issue. The scene depicted in Agent Drew’s testimony, and apparently credited by the jury, has Gonzalez holding out a fistful of currency to the other agent, exclaiming, “One for one. The money for the gun. The money should take care of the gun problem.”- Moreover, as the agents drove off, Gonzalez was reported as saying: “What about my gun? When do I get the gun?” From this testimony, the jury could rationally conclude that when Gonzalez offered the money, he intended to receive the benefit of keeping his gun. Consequently, we will not disturb the jury’s finding of bribery.
 

 C. Challenge to Sentence
 

 Gonzalez claims that the district court relied on insufficient evidence to conclude that he conspired to sell 14.7205 kilograms of cocaine and .336 kilograms of heroin.
 
 See
 
 U.S.S.G. §§ 2Dl.l(a)(3), 3D1.2(b), (d). The district court followed the guidelines which assign a base offense level of 34 to offenses involving at least 15 but less than 50 kilograms of cocaine; the drug equivalency table of guideline § 2D1.1 provides that the amount of heroin sold may be added to the quantity of cocaine to reach this base level. U.S.S.G. § 2D 1.1. The court did not clearly err in its factual determination of these two drug quantities, having based its conclusions, first, on a government-submitted report analyzing wiretap conversations concerning drug quantities, and second, on Judge Glasser’s personal review of the thirty-nine tapes containing these conversations. Judge Glasser stated that “the interpretation of the wiretaps by Agent Rivera is credible and convincing [and] would leave very little doubt that that calculation is correct.” Judge Glasser additionally pointed out that trial testimony of Crespo regarding drug quantities corroborated the government’s report.
 

 Gonzalez’s sentence is affirmed.
 

 III.
 
 Rivera
 

 Rivera asserts that his conviction for cocaine conspiracy should be reversed for insufficient evidence. He concedes that the evidence demonstrated that he made
 
 *1310
 
 deliveries of small amounts of cocaine for Crespo and “was involved in that conspiracy.” He insists, however, that he played no role in the September 27, 1989, negotiation between Crespo and Detective Rivera regarding a trade of heroin for eleven kilograms of cocaine, and therefore should not have been convicted of participating in that multi-kilogram cocaine conspiracy. Our decision in
 
 United States v. Jacobo,
 
 934 F.2d 411 (2d Cir.1991) forecloses this argument:
 

 In
 
 [United States v. Campuzano,
 
 [905 F.2d 677 (2d Cir.),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990),] we ruled that the particular quantity of narcotics is not an element of the offense. Thus, notwithstanding the indictment’s charge of a conspiracy to sell a certain quantity of narcotics, if there is evidence to support a finding that the defendant conspired to sell any quantity of the forbidden substance, the jury’s verdict of guilty is generally not impeachable on the ground that different quantities were charged and proven.
 

 Id.
 
 at 415. Thus, Rivera’s conviction must stand; the evidence overwhelmingly supports his involvement in the conspiracy, regardless of the precise weights of the drugs sold during the period of the conspiracy,
 
 id.,
 
 and regardless of the weight of the particular drugs handled by Rivera.
 

 CONCLUSION
 

 We reverse for insufficient evidence Gonzalez’s conviction under 18-U.S.C. § 924(c), carrying a firearm in relation to a drug-trafficking crime. In all other respects the judgments against Gonzalez, Cardona, and Rivera are affirmed.