101 F.3d 683
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES
v.
Jairo LOPEZ and Jairo Emil Zuluaga, Defendants-Appellants.
 Nos. 95-1381L, 95-1589.
 United States Court of Appeals, Second Circuit.
 May 9, 1996.
 
 APPEARING FOR APPELLANTS:Philip L. Weinstein, Legal Aid Society, Federal Defender Division, New York, N.Y.
 John Burke, Brooklyn, N.Y. APPEARING FOR APPELLEE:Celeste L. Koeleveld, Asst. U.S. Atty., New York, N.Y.
 S.D.N.Y.
 AFFIRMED.
 Before NEWMAN, Chief Judge, and FEINBERG and OAKES, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel for appellant Zuguaga and appellee, and submitted by counsel for appellant Lopez.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 3
 Defendant-appellant Jairo Lopez appeals from the June 21, 1995, judgment of the District Court convicting him, after a guilty plea, of conspiracy to distribute narcotics. Lopez contends that the District Court erred in failing to establish an adequate factual basis for his guilty plea. This claim is without merit.
 
 
 4
 Defendant-appellant Jairo Zuluaga appeals from the October 13, 1995, judgment of the District Court convicting him, after a jury trial, of conspiracy to distribute narcotics. Zuluaga challenges the sufficiency of the evidence and contends that he should have been granted a severance. Both claims are without merit.
 
 1. Jairo Lopez
 
 5
 a. Lopez contends that the District Court failed to establish an adequate factual basis for his guilty plea. See Fed.R.Crim. P. 11(f) (1995). More specifically, Lopez argues that the District Court failed to determine whether he was a participant in the single conspiracy alleged in his indictment (the "Papa conspiracy") or in several other conspiracies.
 
 
 6
 The record of Lopez's plea colloquy indicates that he initially admitted to participating in three separate conspiracies: one involving selling heroin for an unnamed source, one involving transporting cocaine for an unnamed source, and one involving laundering money for Papa. The Government then made an offer of proof to show that Lopez knew the heroin and cocaine he was distributing had originated with Papa. After a short recess, Lopez revised his previous statement and unequivocally admitted to participating in a single conspiracy. See Rizzo v. United States, 516 F.2d 789, 794 (2d Cir.1975) ("the reading of the indictment coupled with the defendant's admission that he committed the acts charged therein may, in some instances, satisfy the factual basis requirement....").
 
 
 7
 b. Although Lopez does not specifically rely on Fed.R.Crim.P. 32(e), he challenges the denial of his attempt to withdraw his plea. The applicable standard is abuse of discretion. See United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir.1992); United States v. O'Hara, 960 F.2d 11, 13-14 (2d Cir.1992), and the relevant factors are (1) whether Lopez asserted a claim of innocence, (2) whether undue time elapsed between his guilty plea and his motion to withdraw, and (3) whether any substantial prejudice to the Government would result. See Fed.R.Crim.P. 32(e) advisory committee's note (1995) (1983 Amendment).
 
 
 8
 In this case, Lopez did not assert a claim of innocence at the time of his motion to withdraw his plea. Moreover, Lopez delayed over five months before seeking to withdraw his guilty plea. During that time, the Government had already conducted a six-week trial of his co-defendants. This Court has found substantial prejudice to the Government under similar circumstances. See United States v. Lombardozzi, 436 F.2d 878, 881 (2d Cir.), cert. denied, 402 U.S. 908 (1971). Under the circumstances presented here, the District Court did not abuse its discretion in denying Lopez's motion to withdraw his guilty plea.
 
 2. Jairo Zuluaga
 
 9
 a. The evidence against Zuluaga was sufficient. There was abundant evidence that a narcotics conspiracy existed, and the evidence showed that Zuluaga, who worked as a garage attendant, knowingly assisted several members of the conspiracy to transfer cash that was being stored in the garage. Also, on at least one occasion, Zuluaga had direct contact with Papa in order to notify him about police surveillance at the garage.
 
 
 10
 Lastly, Zuluaga participated in an unusual series of events concerning some beans that contained cocaine. Lopez initially gave the beans to Zuluaga without knowing of their true nature. Zuluaga then gave the beans to his sister and sister-in-law. When Papa notified Lopez that the beans contained cocaine, Lopez called Zuluaga to warn him that the beans were "poisoned." In response, Zuluaga laughed and informed Lopez that he had already told his sister not to eat them. Lopez then instructed Zuluaga to "walk about ten blocks" and wait for him. Lopez and Zuluaga subsequently drove to an address in Brooklyn, where Zuluaga picked up a bag from his sister and returned to the car. Lopez then proceeded to Queens, where he drove around in an apparently surveillance-conscious manner. The Government at that point was unable to continue following him. Shortly thereafter, Lopez made a telephone call to another co-conspirator, and informed him that a bag of beans had been discarded in Queens and that he should retrieve it.
 
 
 11
 The jury was entitled to infer that Zuluaga knew the beans contained cocaine, that he knowingly assisted Lopez in retrieving the beans, and that he and Lopez disposed of the beans when they discovered that the police were following them. Although Zuluaga now proffers an innocent explanation of these events, the jury was not required to accept his interpretation of the evidence. The evidence was sufficient to support Zuluaga's conviction for conspiracy to distribute narcotics.
 
 
 12
 b. Zuluaga also contends that the District Court erred in denying his motion for a severance. Zuluaga argues that the jury in this case was incapable of fairly assessing the limited evidence against him because of a prejudicial spillover caused by the voluminous evidence introduced against his more culpable co-conspirators. We review the decision of the District Court for abuse of discretion. See United States v. Lasanta, 978 F.2d 1300, 1306 (2d Cir.1992).
 
 
 13
 The decision whether to sever multi-defendant trials has been characterized as "virtually unreviewable." See id. (quoting United States v. Cardascia, 951 F.2d 474, 482 (2d Cir.1991) (internal quotations omitted)). In order to prevail, Zuluaga must show that "there is a serious risk that a joint trial would ... prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). It is not enough that Zuluaga "merely ... may have [had] a better chance of acquittal in [a] separate trial[ ]." Id. at 540. Moreover, "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Scarpa, 913 F.2d 993, 1015 (2d Cir.1990) (internal quotations omitted).
 
 
 14
 Zuluaga's claim of prejudicial spillover is not convincing. Even if he had received a separate trial, the Government would have been entitled to introduce all of the evidence against him that was presented in the joint trial. The Government was "entitled to show the entire range of evidence of the conspiracy against each [co-conspirator]." United States v. Nersesian, 824 F.2d 1294, 1304 (2d Cir.), cert. denied, 484 U.S. 958 (1987).
 
 
 15
 Although Zuluaga argues that, in a separate trial, the evidence relating to his co-conspirators "might" have been excluded as being substantially more prejudicial than probative, that possibility exists in virtually every case where a defendant seeks a severance. Lastly, we note that the District Court correctly instructed the jury to assess the evidence against each defendant separately. There is no reason to believe that the jury was incapable of "making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.