680 So.2d 550 (1996)
Tyvessel Tyvorus WHITE, Appellant,
v.
STATE of Florida, Appellee.
No. 94-2823.
District Court of Appeal of Florida, First District.
July 29, 1996.
*551 Nancy A. Daniels, Public Defender; David P. Gauldin, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Douglas Gurnic, Assistant Attorney General, Tallahassee, for Appellee.

ON MOTION FOR CERTIFICATION
VAN NORTWICK, Judge.
We grant appellant's motion for certification, withdraw our prior opinion in this cause, substitute the following opinion in its stead, and certify a question of great public importance to the Florida Supreme Court.
Tyvessel Tyvorus White appeals his judgment and sentence for possession of cocaine. White argues that the trial court erred in denying his motion to suppress the introduction into evidence of cocaine found in White's car during a warrantless inventory search of the car following its seizure pursuant to the Florida Contraband Forfeiture Act, sections 932.701-932.707, Florida Statutes (1993), and in failing to exclude the testimony of a police officer relating to a prejudicial statement made by White prior to receiving "Miranda warnings."[1] Because we conclude (i) that the police had probable cause to seize White's vehicle under the Forfeiture Act and the subsequent inventory search of the seized car was a reasonable procedural measure and (ii) that White's statement was freely and voluntarily given without interrogation or its functional equivalent, we affirm.

Factual and Procedural Background
In October 1993, White was arrested at his place of employment by police officers with the Bay County Joint Narcotics Task Force and charged with the sale of a controlled substance.[2] Prior to his arrest, the arresting police officers had determined to seize White's automobile under the Forfeiture Act on the grounds that, based on police eye-witnesses and videotape, it had been used in the delivery and sale of cocaine. As contemplated by the Forfeiture Act, section 932.703, Florida Statutes (1993), no prior court order or warrant was issued authorizing the seizure. The car was seized and removed to the task force headquarters, where a routine inventory search revealed two pieces of crack cocaine in the ashtray. Based on the seizure of this crack cocaine, White was also charged with possession of a controlled substance, his *552 conviction for which is the subject of the instant appeal.
White was also transported to the task force headquarters. Prior to the arresting officer reading White his constitutional warnings, and during the course of the officer explaining to White the charges for which he was arrested, White remarked that "He had recently got back into the business." Because of prior discussions between the arresting officer and White, the officer understood the "business" to mean the sale of cocaine.
White moved to suppress the cocaine seized during the search of his car and, at trial, objected to the introduction of his statements made prior to receiving the Miranda warnings. The trial court reserved ruling on these issues and allowed the evidence and statements to go to the jury. White was found guilty as charged. At a subsequent hearing, White's suppression motion was denied.

Forfeiture Seizure and Subsequent Search
On appeal, White argues that the trial court should have suppressed the cocaine seized from his car. He contends that the seizure of his vehicle was impermissible since it was made without warrant or probable cause and the subsequent search was unreasonable under the Fourth Amendment since the forfeiture seizure was improper and the police had no probable cause to search the vehicle.
The Florida Contraband Forfeiture Act authorizes law enforcement agencies to seize vehicles "of any kind" used "to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article." § 932.701(2)(a)5; 932.702(3), Fla. Stat. (1993). The Forfeiture Act defines "contraband article" to include "any controlled substance as defined in chapter 893." § 932.701(2)(a)1, Fla. Stat. (1993). Chapter 893 includes cocaine and its derivatives in its list of controlled substances. § 893.03(2)(a)4, Fla. Stat. (1993). Thus, the Forfeiture Act clearly authorizes the police to seize vehicles used to facilitate the sale of cocaine.
The Forfeiture Act sets forth the procedure to be used in seizing personal property, as follows:
Personal property may be seized at the time of the violation or subsequent to the violation, provided that the person entitled to notice is notified at the time of the seizure or by certified mail, return receipt requested, that there is a right to a(sic) adversarial preliminary hearing after the seizure to determine whether probable cause exists to believe that such property has been or is being used in violation of the Florida Contraband Forfeiture Act.
§ 932.703(2)(a), Fla. Stat. (1993). A post-seizure adversarial preliminary hearing may be requested within 15 days after receipt of this notice and the hearing must be set and noticed by the seizing agency and held by the court within 10 days of receipt of the hearing request or as soon as practicable thereafter. Id. At the hearing, the court must determine whether probable cause existed for the seizure. § 932.703(2)(a), Fla. Stat. (1993). Thus, the only pre-seizure procedural requirement under the Forfeiture Act is the giving of a notice of the right to a subsequent hearing. Here, White does not claim this notice requirement was violated.
White's argument that to seize his car under the Forfeiture Act the police were required to have probable cause to believe the vehicle contained contraband at the time of seizure is without merit. Under the Forfeiture Act, the seizing agency is required only to have probable cause to believe that the property sought to be seized "was used, is being used, was attempted to be used, or was intended to be used" in violation of the Forfeiture Act. § 932.703(2)(c), Fla. Stat. (1993). The fact that the police, as here, did not have probable cause to believe the vehicle contained contraband or was being used in violation of the Forfeiture Act at the moment they seized the vehicle does not render the seizure unlawful under the Act. Having probable cause to believe there was prior usage of the vehicle in violation of the Forfeiture Act is sufficient.[3]See, Knight v. State, 336 So.2d *553 385, 387 (Fla. 1st DCA 1976), cert. denied, 345 So.2d 424 (Fla.1977)(Forfeiture Act "clearly contemplates that proof of past violations of the act may provide the basis for forfeiture."); State v. One (1) 1977 Volkswagen, 455 So.2d 434 (Fla. 1st DCA 1984), approved, 478 So.2d 347 (Fla.1985)(police properly seized a vehicle based upon a drug transaction occurring almost two months prior to the seizure); In re Forfeiture of 1979 Toyota Corolla, 424 So.2d 922, 924 (Fla. 4th DCA 1982)("[T]ransportation by automobile of a key figure to the site of a drug transaction constitutes a sufficient nexus to justify the forfeiture of the car.").
Similarly, White's argument that the police were required to obtain a warrant or court order before seizing the vehicle is without merit. Nothing in the Forfeiture Act requires the obtaining of a warrant or court order before seizing a vehicle. See, State v. Pomerance, 434 So.2d 329, 330 (Fla. 2d DCA 1983)(The Forfeiture Act "nowhere mentions obtaining a warrant; it simply states that an offending vehicle `shall be seized.' We know of no rationale for judicially engrafting onto the statute a requirement that a warrant be obtained."); In re Forfeiture of 1986 Ford PU, 619 So.2d 337, 338 (Fla. 2d DCA 1993)(Forfeiture Act does not require a warrant, consent, or exigent circumstances prior to seizing a vehicle used in violation of the statute).
The fact that the Florida Legislature has authorized by statute the warrantless seizure of a vehicle based upon probable cause that it had been used to facilitate a drug transaction, however, does not end our inquiry. The further question raised here is whether such a warrantless seizure of a motor vehicle violates constitutional prohibitions against illegal search and seizure.[4] We hold that it does not.
Neither the Florida nor United States Supreme Court has directly addressed whether the Fourth Amendment requires law enforcement officers to obtain a warrant prior to seizing a vehicle under the Florida Forfeiture Act or similar statute. The Florida Forfeiture Act, however, is substantively similar to the federal forfeiture statute, see, 21 U.S.C. § 881, and the Uniform Controlled Substances Act, see, 9 U.L.A. § 505. Thus, decisions of federal courts and courts of certain sister states are useful to our consideration here.
The federal circuits are split in their analysis of this issue. The majority of the circuits that have considered this question have held that a warrantless seizure of a vehicle under the federal forfeiture act does not violate the Fourth Amendment and that evidence obtained in a subsequent inventory search is admissible in a criminal prosecution. U.S. v. Decker, 19 F.3d 287 (6th Cir.1994); U.S. v. Pace, 898 F.2d 1218 (7th Cir.1990); U.S. v. Valdes, 876 F.2d 1554 (11th Cir.1989); U.S. v. One 1978 Mercedes Benz, Four-Door Sedan, 711 F.2d 1297 (5th Cir.1983); U.S. v. Kemp, 690 F.2d 397 (4th Cir.1982); U.S. v. Bush, 647 F.2d 357 (3d Cir.1981). Only three circuits have held the procedure in question to have been a violation of a defendant's Fourth Amendment rights. See, U.S. v. Dixon, 1 F.3d 1080 (10th Cir.1993); U.S. v. Lasanta, 978 F.2d 1300 (2d Cir.1992); U.S. v. $149,442.43 in U.S. Currency, 965 F.2d 868 *554 (10th Cir.1992); U.S. v. Linn, 880 F.2d 209 (9th Cir.1989).[5] We have examined these federal decisions and find the rationale employed by the majority view to be persuasive.
Several state appellate courts have also addressed this issue. For example, in State v. McFadden, 63 Wash.App. 441, 820 P.2d 53, 57 (Wash.App.1991), rev. denied, 119 Wash.2d 1002, 832 P.2d 487 (Wash.1992), the Washington court held:
We hold that a motor vehicle seized pursuant to [Washington forfeiture statute] on probable cause that it is used to facilitate a drug transaction is subject to a valid inventory search and evidence found in the course of such a search is admissible at trial.
See also, Lowery v. Nelson, 43 Wash.App. 747, 719 P.2d 594 (Wash.App.1986), rev. denied, 106 Wash.2d 1013 (1986); State v. Brickhouse, 20 Kan.App.2d 495, 890 P.2d 353 (1995); c.f., Davis v. State, 813 P.2d 1178 (Utah 1991).
We join the majority of the federal and state jurisdictions which have considered this issue and hold that a warrantless seizure of a motor vehicle based on probable cause that the vehicle was used in violation of the Forfeiture Act does not violate the Fourth Amendment prohibition against unreasonable searches and seizure. Although the decisions upholding a warrantless forfeiture seizure state various reasons, we prefer the rationale adopted by the Eleventh Circuit in U.S. v. Valdes, 876 F.2d at 1559-60. In Valdes, in upholding under the Fourth Amendment a seizure and subsequent inventory search of an automobile under the federal forfeiture statute, the court reasoned and held:
If federal law enforcement agents, armed with probable cause, can arrest a drug trafficker without repairing to the magistrate for a warrant, we see no reason why they should not also be permitted to seize the vehicle the trafficker has been using to transport his drugs. Appellants would have us accord the trafficker's property interest greater deference than his liberty interest; they seem to suggest that the injury caused by erroneous detention (i.e. the period of time between seizure, or arrest, and the magistrate's ruling ending the detention) is somehow greater in the case of one's property than it is in the case of one's liberty. We are not persuaded. We therefore hold that the warrantless seizures of appellants' automobiles, and the subsequent inventory searches, were not unreasonable under the fourth amendment. (Footnotes omitted).
Id.
We are also influenced in our holding by the fact that the property seized here was a motor vehicle, a type of property found by the Supreme Court to have less Fourth Amendment protection against warrantless searches and seizures under the so-called "automobile exception," California v. Carney, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406 (1985). Although privacy interests in a motor vehicle are protected under the Fourth Amendment, under the automobile exception those interests have a lesser degree of protection because "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought," id., 471 U.S. at 390, 105 S.Ct. at 2069, and "because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." Id., 471 U.S. at 391, 105 S.Ct. at 2069. Thus, a warrantless search and seizure of a motor vehicle may pass constitutional scrutiny absent any exigent *555 circumstances other than the characteristics inherent in a motor vehicle. Id. 471 U.S. at 390-91, 105 S. Ct. at 2069. Logically, for the same reasons, a motor vehicle may be seized under a forfeiture statute without a prior warrant. See e.g., U.S. v. Linn, 880 F.2d at 215; U.S. v. $29,000U.S. Currency, 745 F.2d 853 (4th Cir.1984).
Because we hold that the police properly seized the appellant's vehicle under the Forfeiture Act, we conclude that the subsequent inventory search was reasonable and, thus, the cocaine seized in the vehicle was properly admitted at trial. Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)(inventory searches pursuant to standard police procedures are reasonable under Fourth Amendment); U.S. v. Valdes, 876 F.2d at 1559-60; State v. Pomerance, 434 So.2d 329, 330 (Fla. 2d DCA 1983)(if the defendant's automobile was properly seized under the Forfeiture Act "the search of the trunk of the car was a proper inventory search"). We find Cooper directly applicable here. In Cooper, the Supreme Court upheld the warrantless search of a vehicle justified solely on the basis that the vehicle was in the lawful custody of the state following its seizure under California's forfeiture statute, ruling:
It would be unreasonable to hold that the police, having to retain the car in their custody ... had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding.
Cooper, 386 U.S. at 61-62, 87 S.Ct. at 791.
Nevertheless, because we recognize that neither the Florida Supreme Court nor United States Supreme Court has directly addressed the issue presented here, and that the federal circuit courts have reached different conclusions concerning this constitutional issue, we certify to the Florida Supreme Court the following question as one of great public importance:
WHETHER THE WARRANTLESS SEIZURE OF A MOTOR VEHICLE UNDER THE FLORIDA FORFEITURE ACT (ABSENT OTHER EXIGENT CIRCUMSTANCES) VIOLATES THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION SO AS TO RENDER EVIDENCE SEIZED IN A SUBSEQUENT INVENTORY SEARCH OF THE VEHICLE INADMISSIBLE IN A CRIMINAL PROSECUTION.

Statement Prior to Miranda Warning
White argues that his statement to the police that "[h]e had recently got back into the business" was made while he was in custody during the "functional equivalent" of interrogation and, therefore, violated the requirements of Miranda. We find, however, that competent substantial evidence in the record supports a conclusion that the statement was spontaneously, freely, and voluntarily made and, accordingly, the trial court did not abuse its discretion in admitting the statement into evidence. Gray v. State, 640 So.2d 186, 194 (Fla. 1st DCA 1994).
Miranda established that "[p]rior to any questioning, the [suspect] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612. Miranda states, however, that "[a]ny statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence." 384 U.S. at 478, 86 S.Ct. at 1630. Nevertheless,
the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean *556 questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.
384 U.S. at 444, 86 S.Ct. at 1612. Thus, "[t]he fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated...." 384 U.S. at 478, 86 S.Ct. at 1630.
In Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Court concluded "that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Id., 446 U.S. at 300-301, 100 S.Ct. at 1689. The Innis court further concluded that the functional equivalent of interrogation under Miranda refers to practices that the police "should know" are "reasonably likely to elicit an incriminating response from the suspect." Id., 446 U.S. at 301, 100 S.Ct. at 1689-1690. This interrogation standard is an objective one which "focuses primarily upon perceptions of the suspect, rather than the intent of the police." Id., 446 U.S. at 301, 100 S.Ct. at 1690.
In the instant case, while the arresting officer was reading the arrest affidavits to White, explaining the charges for which he was arrested, White made the incriminating statement. Although at the time the statement was made, White had not been read his Miranda rights, his statement did not come in response to any question posed by the police. Thus, to conclude whether White's statement was properly admissible, it must be determined whether the statement was made voluntarily or through the functional equivalent of interrogation.
The Supreme Court in Innis "address[ed] for the first time the meaning of `interrogation' under Miranda...," id. 446 U.S. at 297, 100 S.Ct. at 1687-88, and discussed the two-prong analysis used in determining whether a suspect's statements are freely and voluntarily given or are the result of interrogation or its functional equivalent. In Innis, the defendant was arrested for murder, kidnapping and armed robbery, during which he had used a shotgun. Innis, 446 U.S. at 294, 100 S.Ct. at 1686. At the time of his arrest he was unarmed. Id. After being given his Miranda rights and stating that he wanted to speak with a lawyer he was placed in the back of a police car. Id. During the ride to the police station the two arresting officers in the patrol car began a conversation about the missing shotgun, mentioning their concerns that one of the handicapped children from a nearby school might find the gun and injure themselves. Id., 446 U.S. at 294-95, 100 S.Ct. at 1686-87. The defendant interrupted the conversation and stated that he would show the police were the gun was located. Id., 446 U.S. at 295, 100 S.Ct. at 1687. The Supreme Court concluded that at the time the statement was made the defendant was not being interrogated within the meaning of Miranda. Id., 446 U.S. at 302, 100 S.Ct. at 1690. The Supreme Court reasoned as follows:
It is undisputed that the first prong of the definition of "interrogation" was not satisfied, for the conversation between [the] Patrolmen ... included no express questioning of the respondent....
Moreover, it cannot be fairly concluded that the respondent was subject to the "functional equivalent" of questioning. It cannot be said, in short, that [the] Patrolmen... should have known that their conversation was reasonably likely to elicit an incriminating response from the respondent.
Id. The Court went on to explain that, while the officer's comments obviously "struck a responsive chord" in the defendant, the conversation did not amount to the functional equivalent of interrogation. Id., 446 U.S. at 303, 100 S.Ct. at 1691. The Court reasoned that there was
nothing in the record to suggest that the officers were aware that the respondent was peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children. Nor [was] there anything in the record to suggest that the police knew that the respondent was unusually disoriented or upset at the time of his arrest. *557 Id., 446 U.S. at 302-303, 100 S.Ct. at 1690. (Emphasis added). Therefore, the Court found that the record failed to show that the police "should have known" the conversation they had "was reasonably likely to elicit an incriminating response" from the defendant, id., 446 U.S. at 303, 100 S.Ct. at 1691, and held the statement was properly admitted into evidence.
Similarly, in the instant case, it is undisputed that White's statement was not made in response to express questioning. Further, it cannot be fairly concluded that White was subject to the "functional equivalent" of questioning. The arresting officer's act of explaining the charges to White was reasonable and understandable given that White had just been placed under arrest and had asked to know why. Like in Innis, the fact that the officer's explanation may have "struck a responsive chord," causing White to interject that "[h]e recently got back into the business," does not constitute the functional equivalent of an interrogation. Nothing in the record indicates to us that the arresting officers should have known that the explanation of charges to White was reasonably likely to elicit an incriminating response. Further, nothing in the record shows that the officers were aware that White was "peculiarly susceptible" or so "unusually disoriented or upset" that simply informing him of the charges would likely evoke incriminating statements. Because we find that White's statement was made freely and voluntarily, and not in response to express questioning or during the functional equivalent of an interrogation, we hold that the statement was properly admissible at trial under Miranda. See also, Hawkins v. State, 217 So.2d 582, 583 (Fla. 4th DCA 1969).
AFFIRMED.
WEBSTER, J., concurs.
WOLF, J., concurs and dissents with written opinion.
WOLF, Judge, concurring in part and dissenting in part.
I concur in the majority's decision to certify a question to the Florida Supreme Court, but respectfully dissent from their decision to uphold the warrantless seizure of the automobile.
The warrantless seizure of an automobile absent exigent circumstances violates the Fourth Amendment of the United States Constitution even though probable cause exists to believe that the automobile is subject to forfeiture as a result of prior narcotics transactions.
Appellant was arrested at his workplace based upon narcotics transactions unrelated to his present conviction. Officer Pierce was the arresting officer, and he was accompanied by Officer Squire. The purpose of Squire's presence at the arrest was to drive appellant's vehicle which was to be seized for forfeiture because it had been used to sell and deliver cocaine. There was no warrant authorizing seizure of the vehicle.
At the time of appellant's arrest, he had the car keys in his pocket and the vehicle was parked outside in the parking lot of his place of employment. The police seized and searched the vehicle. The subsequent search of the vehicle revealed two pieces of crack cocaine in the ashtray of the car. It is this cocaine which is the subject of the charges in the instant case.
The Fourth Amendment requires that police obtain a warrant for search and seizure of an automobile absent exigent circumstances. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). While exigent circumstances may justify a warrantless seizure, no such circumstances exist in this case. The state argues, however, that the warrantless seizure is justified based on the fact that probable cause existed to believe that the car was subject to forfeiture. There is no Florida case that directly deals with this issue. In Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991), the court found that notification was not constitutionally mandated prior to a seizure pursuant to the Florida Contraband Forfeiture Act, sections 932.701-932.704, Florida Statutes (1993). The court did not rule directly on whether a warrant was required, but stated,
The state conceded at oral argument that the fourth amendment applies to the seizure *558 of property in forfeiture actions, and argued that the fourth amendment protections adequately protect property owners. We fully agree that the fourth amendment applies when there has been a seizure.
Department of Law Enforcement, supra at 963. The court further states in a footnote,
Since article I, section 12 of the Florida Constitution expressly requires conformity with the fourth amendment of the United States Constitution, the warrant requirement of article I, section 12 also applies to forfeiture actions under Florida law.

Id. at 963 (emphasis added).
The decision of the second district in In re: Forfeiture of 1986 Ford PU, 619 So.2d 337 (Fla. 2d DCA 1993), is not inconsistent with the supreme court's statement concerning the applicability of the Fourth Amendment's warrant requirement. The court ruled that nothing in the case of Department of Law Enforcement, supra, or the forfeiture statute specifically requires a warrant, but the court did not specifically rule on whether a warrantless seizure would violate the Fourth Amendment. To the extent that the decision could be argued to support the argument that no warrant is required, it is unpersuasive because no analysis is presented to support this position.
Federal courts which have dealt with the necessity of obtaining a warrant when property is subject to a federal forfeiture statute have reached different conclusions. The ninth circuit has held that a warrantless seizure of an automobile absent exigent circumstances violates the Fourth Amendment,[6] notwithstanding probable cause to believe that the car is subject to forfeiture. United States v. McCormick, 502 F.2d 281 (9th Cir. 1974); United States v. Spetz, 721 F.2d 1457 (9th Cir.1983).[7] In U.S. v. Lasanta, 978 F.2d 1300 (2nd Cir.1992), the court discussed the cases which had upheld the warrantless seizures of automobiles subject to forfeiture and stated,
We find no language in the fourth amendment suggesting that the right of the people to be secure in their "persons, houses, papers, and effects" applies to all searches and seizures except civil-forfeiture seizures in drug cases.
Id. at 1305. In rejecting the attorney general's argument, the court goes on to state,
While congress may have intended civil forfeiture to be a "powerful weapon in the war on drugs," it would, indeed, be a Pyrrhic victory for the country, if the government's relentless and imaginative use of that weapon were to leave the constitution itself a casualty.
Id. at 1305 (citations omitted).
In United States v. Valdes, 876 F.2d 1554 (11th Cir.1989), the 11th circuit, however, justified a warrantless seizure of property subject to forfeiture on the basis that a warrantless arrest of a person may be made based on probable cause, and a person's property is entitled to no greater protection than the person himself. See also U.S. v. Pace, 898 F.2d 1218 (7th Cir.1990). Such warrantless seizures have also been upheld based on the lack of reasonable expectation of privacy attached to a car on a public street. See Pace, supra at 1242; U.S. v. Bush, 647 F.2d 357 (3rd Cir.1981). This line of reasoning is based on a statement in the Supreme Court's opinion in G.M. Leasing Corp. v. United States, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), where a warrantless *559 seizure of an automobile by internal revenue agents to satisfy a tax levy was upheld.[8] Other cases seem to adopt the reasoning that once you have probable cause to seize a vehicle, or believe it is used for drugs, then exigent circumstances continue to exist even if the seizure is not made until several months later. U.S. v. One Mercedes Benz, Four-Door Sedan, 711 F.2d 1297 (5th Cir. 1983); U.S. v. Kemp, 690 F.2d 397 (4th Cir. 1982).
These cases validating a warrantless search absent exigent circumstances are unpersuasive. The argument concerning no reasonable expectation of privacy concerning your vehicle on a public street fails to recognize the factual situation in G.M. Leasing Corp., supra. That case involved a seizure of an automobile in order to satisfy a tax debt to the United States, a situation which is similar to a private repossession of an automobile to satisfy a debt. The language in this opinion concerning expectation of privacy on a public street must be read in context of the facts of the case. A person who is in default on a debt or who is subject to a judgment lien does not have a reasonable expectation that his property will not be repossessed on a public street. On the other hand, a person has a reasonable expectation that if the government is seizing his property other than for purposes of satisfying a debt, a warrant will be secured. It is difficult to respond to the argument concerning the theory that if you once believed that the car contained drugs, you may forever seize the car based on exigent circumstances. This theory fails to recognize that both probable cause and exigent circumstances become stale and will no longer support the legality of a later seizure. Cf. Montgomery v. State, 584 So.2d 65 (Fla. 1st DCA 1991).
The argument relied on by the majority for upholding the search, that property may be seized based on probable cause much like a person, while having some initial facial appeal, is still equally unpersuasive. Neither the Supreme Court of the United States nor the Florida Supreme Court has accepted this position. General application of this concept would serve to totally emasculate the warrant requirements for the seizure of an automobile announced in Coolidge, supra. In addition, the position taken by the majority does not deviate from the argument that somehow the forfeiture statute authorizes warrantless seizures of property absent exigent circumstances, the very argument which is rejected in In re: Warrant to Seize One 1988 Chevrolet Monte Carlo, 861 F.2d 307, 311 (1st Cir.1988), and O'Reilly v. United States, 486 F.2d 208, 214 (8th Cir.1973).
I, therefore, see no reason to depart from the rule announced by the Supreme Court in Coolidge, supra, and alluded to by our supreme court in Department of Law Enforcement, that an automobile is not subject to warrantless seizure absent exigent circumstances.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The charges on which White was arrested are not the subject of the instant appeal.
[3] Here, the police had probable cause to believe White's vehicle had been used to facilitate the sale of cocaine, as indicated by the following trial testimony:

THE COURT: Do you know what basis existed at the time you made the arrest and searched the car to file a forfeiture proceeding, what information did you have that that vehicle had been used in illegal activity?
OFFICER SQUIRE: These were all Doug Pierce's cases, it's my understanding this vehicle had been used to deliver and sell cocaine on at least two occasions, maybe three.
PROSECUTOR: And you had been present at at least one of those sales?
OFFICER SQUIRE: Yes.
THE COURT: A sale from the car?
OFFICER SQUIRE: Yes.
[4] White has not challenged the forfeiture on due process grounds and we do not address due process issues here. See, Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 676-80, 94 S.Ct. 2080, 2088-90, 40 L.Ed.2d 452 (1974)(due process does not require federal law enforcement officers to obtain a warrant prior to seizing property they have probable cause to believe is subject to forfeiture); U.S. v. Valdes, 876 F.2d 1554, 1560 at fn. 12 (11th Cir.1989)(due process is satisfied under forfeiture statute "if the government is required to have a sound basis for believing that property is forfeit, and the owner has a fair opportunity to regain it."); Smith v. Hindery, 454 So.2d 663 (Fla. 1st DCA 1984)(Forfeiture Act does not violate due process).
[5] In each of Dixon, Lasanta and Linn, the court, while holding that the warrant requirement applied to seizures for the purpose of forfeiture, still found another method of admitting the evidence. In Dixon, the court held the search and seizure to be illegal, but concluded that a pound of cocaine, found days after the car was seized and discovered only when the cellular phone was being removed, was in plain view and admissible under that exception to the warrant requirement. 1 F.3d at 1084. In Lasanta, after concluding that the search and seizure was illegal, the court found it to be harmless error and affirmed the conviction. 978 F.2d at 1306. In Linn, the court found the warrantless seizure of a motor vehicle was reasonable because the mobility of the vehicle, in effect, created "exigent circumstances." 880 F.2d at 215 ("... the `mobility' underpinning of the automobile exception is, of course, closely related to our `exigent circumstances' analysis, and is the compelling factor.").
[6] See also O'Reilly v. United States, 486 F.2d 208, 214 (8th Cir.), cert. denied, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973); In re: Warrant to Seize One 1988 Chevrolet Monte Carlo, 861 F.2d 307, 311 (1st Cir.1988) (notes the continuing validity of United States v. Pappas, 613 F.2d 324, 330 (1st Cir.1979), where court held that the federal forfeiture statute would only be constitutional if construed to allow seizure "only when seizure immediately follows the occurrence that gives the federal agents probable cause ... and the exigencies of the surrounding circumstances make the requirement of obtaining process unreasonable or unnecessary").
[7] In United States v. Bagley, 772 F.2d 482 (9th Cir.1985), the court appears to abandon McCormick and Spetz relying on California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Both Bagley and Carney, however, involve cases where the police had reasonable grounds to believe that either contraband or evidence would be found in the vehicle at the time of the seizure or search. Such a reasonable belief did not exist in this case.
[8] In U.S. v. Decker, 19 F.3d 287 (6th Cir.1994), relied on by the majority, the vehicles were properly seized pursuant to a warrant, and the focus concerned the propriety of the inventory after the vehicle was searched. I do not quarrel with the legitimacy of the inventory search but unlike Decker, in the instant case, the legality of the seizure is at issue.