710 So.2d 949 (1998)
Tyvessel Tyvorus WHITE, Petitioner,
v.
STATE of Florida, Respondent.
No. 88813.
Supreme Court of Florida.
February 26, 1998.
Rehearing Denied June 1, 1998.
Nancy A. Daniels, Public Defender and David P. Gauldin, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Petitioner.
Robert A. Butterworth, Attorney General; James W. Rogers, Bureau Chief, Criminal Appeals and Daniel A. David, Assistant Attorney General, Tallahassee, for Respondent.
ANSTEAD, Justice.
We have for review the opinion in White v. State, 680 So.2d 550 (Fla. 1st DCA 1996). We accepted jurisdiction to answer the following question certified to be of great public importance:

*950 WHETHER THE WARRANTLESS SEIZURE OF A MOTOR VEHICLE UNDER THE FLORIDA FORFEITURE ACT (ABSENT OTHER EXIGENT CIRCUMSTANCES) VIOLATES THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION SO AS TO RENDER EVIDENCE SEIZED IN A SUBSEQUENT INVENTORY SEARCH OF THE VEHICLE INADMISSIBLE IN A CRIMINAL PROSECUTION.
Id. at 555. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the affirmative. We hold that a citizen's property is protected by the federal and Florida constitutions against warrantless seizure even when the seizure is done pursuant to a statutory scheme for forfeiture.

MATERIAL FACTS[1]
On October 14, 1993, petitioner Tyvessel Tyvorus White (White) was arrested at his place of employment on charges unrelated to this case. After taking White into custody on those unrelated charges, and securing the keys to his automobile, the arresting officers seized his automobile from the parking lot of White's employment. The police did not seize the vehicle incident to White's arrest or obtain a prior court order or warrant to authorize the seizure. Rather, the basis of the seizure was the arresting officers' belief that White's automobile had been used several months earlier to deliver illegal drugs, and therefore the vehicle was subject to forfeiture by the government.[2] After confiscation of the vehicle, a subsequent search turned up two pieces of crack cocaine in the ashtray.
Based on the discovery of the cocaine, White was charged with possession of a controlled substance. White subsequently objected to the introduction into evidence of the cocaine seized during the post-arrest search of his automobile. The trial court reserved ruling on the issue and allowed the evidence to go to a jury. White was thereafter convicted of possession of cocaine; and subsequently the trial court formally denied White's objection and motion to suppress the cocaine evidence.
On appeal, the First District affirmed White's conviction and approved the government's warrantless seizure of White's car. The majority opinion found that the government met the requirements of the Florida Contraband Forfeiture Act, sections 932.701-932.707, Florida Statutes (1993) (hereinafter Forfeiture Act) in that the warrantless seizure of White's automobile was based upon probable cause to believe that the vehicle had facilitated illegal drug activity at some time in the past. Further, the majority found that the warrantless seizure did not violate White's Fourth Amendment right to be secure against unreasonable searches and seizures.[3] In dissent, Judge Wolf asserted that the "warrantless seizure of an automobile absent exigent circumstances violates the Fourth Amendment of the United States Constitution even though probable cause exists to believe that the automobile is subject to forfeiture as a result of prior narcotics transactions." White, 680 So.2d at 557 (Wolf, J., concurring in part and dissenting in part).
*951 Because the court found that neither this Court nor the United States Supreme Court had addressed the issue of whether law enforcement agencies must obtain a warrant prior to seizing a citizen's property under the Florida Contraband Forfeiture Act, the First District certified the issue as one of great public importance to this Court.

LAW AND ANALYSIS
In holding that no prior court authorization was required in order to seize and search White's vehicle, the First District majority applied the "automobile exception" to the warrant requirement. While we recognize the continuing validity of the "automobile exception" to the warrant requirement, we find it inapposite here.
In his dissent, Judge Wolf relied primarily on the opinion of the United States Court of Appeals for the Second Circuit in U.S. v. Lasanta, 978 F.2d 1300 (2d Cir.1992).[4] He also noted this Court's opinion in Department *952 of Law Enforcement v. Real Property, 588 So.2d 957, 963 n. 14 (Fla.1991), wherein we recognized that because "article I, section 12 of the Florida Constitution expressly requires conformity with the fourth amendment of the United States Constitution, the warrant requirement of article I, section 12 also applies to seizures in forfeiture actions under Florida law." White, 680 So.2d at 558 (Wolf, J., concurring in part and dissenting in part).

DEPARTMENT OF LAW ENFORCEMENT
In Department of Law Enforcement, we were able to uphold the constitutionality of Florida's forfeiture act only by imposing numerous restrictions and safeguards on the use of the act in order to protect a citizen's property from arbitrary action by the government. In discussing the act we declared:
The Act raises numerous constitutional concerns that touch upon many substantive and procedural rights protected by the Florida Constitution. In construing the Act, we note that forfeitures are considered harsh exactions, and as a general rule they are not favored either in law or equity. Therefore, this Court has long followed a policy that it must strictly construe forfeiture statutes.
588 So.2d at 961. The major thrust of our holding was that in order to comply with constitutional due process requirements, the government must strictly observe a citizen's constitutional protections when invoking the drastic remedy of forfeiture of a citizen's property. In addition to expressly holding that the Fourth Amendment applies to forfeiture attempts by the government, we specifically explained:
In those situations where the state has not yet taken possession of the personal property that it wishes to be forfeited, the state may seek an ex parte preliminary hearing. At that hearing, the court shall authorize seizure of the personal property if it finds probable cause to maintain the forfeiture action.
Id. at 965. We conclude that the government's unauthorized and warrantless seizure, absent exigent circumstances not established here, clearly violated the constitutional safeguards we recognized in Department of Law Enforcement.
The government did not seek a warrant or an "ex parte preliminary hearing" here in order to secure a neutral magistrate's determination of probable cause. The government just seized the property, thereby putting the property owner and any others claiming an interest in the property in the position of having to take affirmative action against the government in order to protect their rights. This is the very antithesis of the cautious procedure we mandated in Department of Law Enforcement. We simply cannot accept the government's position that it may act at anytime, anywhere, and regardless of the existence of exigent circumstances, or a change in ownership or possession, to seize a citizen's property once believed to have been used in illegal activity, without securing the authorization of a neutral magistrate.

AUTOMOBILE EXCEPTION
As previously noted, the only basis asserted for the unauthorized government seizure here is the so-called automobile exception to the warrant requirement. The district court majority cited California v. Carney, 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985), for the proposition that automobiles are afforded less Fourth Amendment protection against warrantless searches and seizures due to their "ready mobility" and diminished expectations of privacy due to their pervasive governmental regulation. The automobile exception is predicated upon the existence of exigent circumstances consisting of the known presence of contraband in the automobile at the time, combined with the likelihood that an opportunity to seize the contraband will be lost if it is not immediately seized because of the mobility of the automobile. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). For example, in Carney, law enforcement officers had direct evidence[5] that illegal drugs were present and *953 that the suspect was distributing illegal drugs from the vehicle. Accordingly, the Court concluded that the officers "had abundant probable cause to enter and search the vehicle for evidence of a crime." Carney, 471 U.S. at 395, 105 S.Ct. at 2071.
Since it is conceded that the government had no probable cause to believe that contraband was present in White's car, we conclude that Carney and the automobile exception are inapposite as authority. There is a vast difference between permitting the immediate search of a movable automobile based on actual knowledge that it then contains contraband and that an opportunity to seize the contraband may be lost if not acted on immediately, and the altogether different proposition of permitting the discretionary seizure of a citizen's automobile based upon a belief that it may have been used at some time in the past to assist in illegal activity. The exigent circumstances implicit in the former situation are simply not present in the latter situation.
The automobile exception is a narrow, situation-dependent exception which requires much more than the fact that an automobile is the object sought to be seized and searched. Critically, there must be probable cause to believe contraband is in the vehicle at the time of the search and seizure, Carney,[6] and there must be some legitimate concern that the automobile "might be removed and any evidence within it destroyed in the time a warrant could be obtained." Lasanta, 978 F.2d at 1305. The majority opinion below simply failed to address the fundamental requirement of Carney:
In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause [to believe contraband is in the vehicle] is met.

471 U.S. at 392, 105 S.Ct. at 2070 (emphasis added).
As is vividly demonstrated in the Lasanta case, cited by Judge Wolf, the automobile exception does not apply to either the facts of that case or White's case. See White, 680 So.2d at 557 (Wolf, J., concurring in part and dissenting in part) (noting that White was arrested at his workplace, his car keys were in his pocket, and his car was parked outside in his company's parking lot). In Lasanta, the court could easily have been writing about this case when it described the obvious absence of exigent circumstances in the government's forfeiture seizure:
The government does not even suggest that exigent circumstances might justify its warrantless seizure of the vehicle. See, e.g., Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (outlining the automobile exception to the warrant requirement); Carroll v. United States, 267 U.S. 132, 146, 45 S.Ct. 280, 282, 69 L.Ed. 543 (1925) (noting rationale of automobile exception). Investigative agents could have held no realistic concern that the car, parked not in a public thoroughfare, but in Cardona's private driveway, might be removed and any evidence within it destroyed in the time a warrant could be obtained. Cardona was not operating the vehicle, nor was he in it or even next to it; when the agents knocked on his door to arrest him, he was inside his house, asleep.
978 F.2d at 1305. Similarly, the absence of probable cause to believe contraband was in the vehicle combined with an obvious lack of any other exigent circumstances renders the automobile exception inapplicable here. The exception does not apply when no probable cause exists and the police arrest either a *954 sleeping suspect, Lasanta, or a suspect at work with the keys in his pocket. White. There simply was no concern presented here that an opportunity to seize evidence would be missed because of the mobility of the vehicle. Indeed, the entire focus of the seizure here was to seize the vehicle itself as a prize because of its alleged prior use in illegal activities, rather than to search the vehicle for contraband known to be therein, and that might be lost if not seized immediately.

SEIZURE OF PROPERTY VS. SEIZURE OF PERSON
Finally, the reasoning of the district court majority, that since a defendant's person can be seized without a warrant his property should be no different, simply proves too much. If we were to follow that reasoning to its logical conclusion we would, in essence, amend the Fourth Amendment out of the Constitution and do away with the requirement of a warrant entirely for the search and seizure of property.[7] It will always be more intrusive to seize a person than it will be to seize his property. That is the nature of human values. However, such an approach would apparently have us do away with the constitutional law of search and seizure as to property entirely, simply because we have permitted the warrantless arrest of a person.
The United States Supreme Court has purposely subjected the Fourth Amendment to only a "few well-delineated exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). For example, the courts have carefully restricted the law of search and seizure to permit a limited search of an arrestee and his person "incident" to a valid arrest. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, the reasoning of the district court majority, if carried to its logical bounds, would do away with the limitations established to a search incident to a lawful arrest and now permit a search of anything, anywhere, based upon probable cause, without a warrant, since those actions involving property would obviously be less intrusive than seizing the person. Obviously, we are not willing to accept such a proposition and its implications.[8]

CONCLUSION
In the end, the maintenance of an orderly society mandates that a citizen's property should not be taken by the government, in the absence of exigent circumstances, without the intervention of a neutral magistrate. *955 Certainly the warrant requirement would have posed no undue burden on the government here where the vehicle was parked safely at the petitioner's place of employment and the government had the keys and the petitioner in custody. Moreover, any inconvenience to the government pales in comparison to the consequences for our justice system and constitutional order if such abuses are left unchecked. See Department of Law Enforcement. As the Second Circuit poignantly observed in Lasanta, 978 F.2d at 1305, "it would, indeed, be a Pyrrhic victory for the country, if the government's imaginative use of that weapon [civil forfeiture] were to leave the constitution itself a casualty."
In summary, we answer the certified question in the affirmative and hold that the warrantless seizure of a citizen's property is protected by the federal and Florida constitutions even when the seizure is made pursuant to a statutory forfeiture scheme. Accordingly, we quash the First District's opinion and remand this case for proceedings consistent herewith.
It is so ordered.
KOGAN, C.J., SHAW and HARDING, JJ., and GRIMES, Senior Justice, concur.
WELLS, J., dissents with an opinion in which OVERTON, J., concurs.
WELLS, Justice, dissenting.
For more than twenty-three years, Florida's forfeiture statute has been enforced by Florida courts, including this Court, as the legislature wrote it. Today, by this decision, the majority judicially amends this twentythree-year-old statute and places Florida in the minority of federal and state jurisdictions, which require a preseizure warrant in order to enforce forfeiture statutes. Today's decision also puts our state procedure at odds with federal forfeitures in Florida since the Eleventh Circuit is among the majority of jurisdictions which recognize that warrantless seizures pursuant to forfeiture statutes are not in violation of the Fourth Amendment to the United States Constitution.
I dissent because I agree with the majority of jurisdictions and the Eleventh Circuit and do not believe that this change in the law of Florida is suddenly required by the Fourth Amendment. The case of United States v. Lasanta, 978 F.2d 1300 (2d Cir.1992), upon which the majority opinion relies, is clearly the minority view.
The seizure in this case was not an unusual enforcement of Florida's forfeiture law or contrary to forfeitures which the appellate courts of Florida have approved since the inception of the statute. Clearly, the period of time between when the police eyewitnesses and the video-tape evidence showed the vehicle being used in the delivery and sale of cocaine and the seizure of the vehicle was within previous approvals by Florida courts. Soon after the forfeiture statute became effective on October 1, 1974, it was recognized that proof of past violations may be the basis for forfeiture. State v. One 1977 Volkswagen, 455 So.2d 434 (Fla. 1st DCA 1984) (police properly seized a vehicle based upon drug transaction occurring almost two months prior to seizure), approved, 478 So.2d 347 (Fla.1985); Knight v. State, 336 So.2d 385, 387 (Fla. 1st DCA 1976), cert. denied, 345 So.2d 424 (Fla.1977).
In 1983, the Second District directly confronted the issue of whether a preseizure warrant needed to be obtained. The Second District held that it did not in State v. Pomerance, 434 So.2d 329, 330 (Fla. 2d DCA 1983), stating:
We have found no case addressing this issue. However, section 932.703, Florida Statutes (1981), which provides for the forfeiture of motor vehicles used to transport, conceal, or facilitate the sale of contraband, in violation of section 932.703, nowhere mentions obtaining a warrant; it simply states that an offending vehicle "shall be seized." We know of no rationale for judicially engrafting onto the statute a requirement that a warrant be obtained.

(Emphasis added.)
In 1985, in Duckham v. State, 478 So.2d 347 (Fla.1985), this Court did an analysis of the forfeiture statute and cases from our district courts and federal circuit courts and upheld the forfeiture of a motor vehicle seized almost two months after the vehicle had been used to facilitate a drug transaction. *956 It is important to note that this seizure of the motor vehicle was not based upon there being probable cause to believe that there was contraband in the vehicle at the time of or before its seizure. The district court's decision in Duckham was approved with this Court noting:
Even though no drugs had been transported in the car, no conversations had taken place in the car, the policeman had never been in the car, and Duckham used the car solely to transport himself to the restaurant where he struck the deal and then to his apartment, the district court found that Duckham used his car to facilitate the sale of contraband within the meaning of subsection 932.702(3), Florida Statutes (1981).
478 So.2d at 348.
Also in 1985, this Court upheld the forfeiture statute against a due-process attack in Lamar v. Universal Supply Co., Inc., 479 So.2d 109 (Fla.1985). This Court specifically stated:
The seizure of property pursuant to a forfeiture statute constitutes an extraordinary situation in which postponement of notice and hearing until after seizure does not deny due process. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The due process rights of claimants are adequately protected, therefore, by the requirement that the state attorney promptly file a forfeiture action following seizure. § 932.704(1), Fla. Stat. (1983).
479 So.2d at 110.
In 1989, in an opinion written by Justice Overton, this Court did another extensive analysis of this statute in State v. Crenshaw, 548 So.2d 223 (Fla.1989), and strongly upheld the enforcement of this statute.
The majority here cites to this Court's 1991 analysis of the forfeiture statute in Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991). However, the majority's quote omits the following sentence which completes the paragraph from which the quote in the majority opinion is taken: "In those situations where a law enforcement agency already has lawfully taken possession of personal property during the course of routine police action, the state has effectively made an ex parte seizure for the purposes of initiating a forfeiture action." 588 So.2d at 965. Through the date of that opinion (in fact until today) law enforcement agencies were considered to have lawfully taken possession of personal property when possession was taken on the basis of and in conformity with the forfeiture statute. Lamar, 479 So.2d at 110.
When Department of Law Enforcement is read in full context, that decision cannot be fairly said to engraft a warrant requirement into the statute. This was the reading given to that decision by the Second District in In re Forfeiture of 1986 Ford, 619 So.2d 337, 338 (Fla. 2d DCA 1993), when it held that "nothing in [Department of Law Enforcement] or the forfeiture statute requires a warrant, consent or exigent circumstances."
Furthermore, the majority opinion here incorrectly states that "the only basis asserted for the unauthorized government seizure here is the so-called automobile exception to the warrant requirement." Majority op. at 952. What the district court actually said was, "We are also influenced in our holding by the fact that the property seized here was a motor vehicle...." White v. State, 680 So.2d 550, 554 (Fla. 1st DCA 1996). The district court's opinion therefore correctly pointed out that privacy interests in a motor vehicle have a lesser degree of Fourth Amendment protection because of a vehicle's mobility and because the expectation of privacy is less than that relating to one's home or office, citing to California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The statement by the district court majority is indisputably correct.
However, the clear reason for the district court majority's decision is the compelling development of precedent in Florida in respect to the statute, which the majority in this Court simply casts aside without mention, and the weight of authority from both federal and state jurisdictions, which the majority fails to acknowledge. One case representing the majority view is from the Eleventh Circuit: United States v. Valdes, 876 F.2d 1554 (11th Cir.1989). The district court majority followed the reasoning of the Eleventh *957 Circuit in Valdes. The rejection of Valdes by this Court's majority places Florida in the illogical (and I believe untenable) situation of there being a warrantless seizure available to federal law enforcement pursuant to the federal forfeiture statute because it is not a violation of the Fourth Amendment to the United States Constitution and a warrantless seizure not being available to Florida law enforcement pursuant to a substantially similar state forfeiture statute because of a holding by this Court that a warrantless seizure is in violation of the Fourth Amendment to the United States Constitution. Though we are not bound to do it, I believe this Court should apply the Fourth Amendment to the United States Constitution in accord with its application by the federal circuit court that has Florida within its jurisdiction. This is particularly so when the Eleventh Circuit's decision is in accord with the majority of other jurisdictions.
I believe the Seventh Circuit clearly expressed correctly the state of the law in federal and state jurisdictions in United States v. Pace, 898 F.2d 1218, 1241 (7th Cir.1990), when it said:

The weight of authority, however, holds that police may seize a car without a warrant pursuant to a forfeiture statute if they have probable cause to believe the car is subject to forfeiture. See, e.g., United States v. Valdes, 876 F.2d 1554, 1558-60 (11th Cir.1989); United States v. $29,000 U.S. Currency, 745 F.2d 853, 856 (4th Cir. 1984); United States v. One 1978 Mercedes Benz, 711 F.2d 1297, 1302 (5th Cir.1983); United States v. One 1977 Lincoln Mark V Coupe, 643 F.2d 154, 158 (3d Cir.1981); United States v. One 1975 Pontiac Lemans, 621 F.2d 444, 450 (1st Cir.1980) (citing cases). We agree with the majority approach. The federal courts' overwhelming approval of warrantless forfeiture seizures based on probable cause, along with the historical acceptance of the constitutionality of such searches, are evidence that such searches have been generally accepted as reasonable. See United States v. Bush, 647 F.2d 357, 370 (3d Cir.1981) (citing cases). It is difficult to ignore this general acceptance. Furthermore, under a civil forfeiture statute, "the vehicle ... is treated as being itself guilty of wrongdoing." United States v. One 1976 Mercedes Benz 280S, 618 F.2d 453, 454 (7th Cir. 1980). Thus, seizing a car from a public place based on probable cause is analogous to arresting a person outside the home based on probable cause. Such an arrest, even without a warrant, does not violate the Fourth Amendment, although it is possibly a more significant intrusion on privacy interests than seizing an unoccupied car. See Bush, 647 F.2d at 370 (citing United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)); see also Valdes, 876 F.2d at 1559; One 1978 Mercedes Benz, 711 F.2d at 1302. And the Supreme Court has approved warrantless seizures in a similar situation. In G.M. Leasing Corp. v. United States, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), Internal Revenue Service agents seized cars subject to tax liens without a warrant. The Court held that the seizures did not violate the Fourth Amendment; the agents had probable cause to believe that the cars were subject to seizure, and the seizures took place "on public streets, parking lots, or other open places." See id. at 351-52, 97 S.Ct. at 627-28; G.M. Leasing provides strong support for the majority position. See One 1975 Pontiac Lemans, 621 F.2d at 450, which adopted the panel's reasoning in United States v. Pappas, 600 F.2d 300, 304 (1st Cir.), vacated 613 F.2d 324 (1st Cir. 1979); Bush, 647 F.2d at 369; see also 3 Wayne R. LaFave, Search and Seizure § 7.3(b), at 83 (2d ed.1987). For all these reasons, we conclude that it was proper for the police to seize Pace's and Besase's cars from the parking lot of Savides' condominium complex, if the police had probable cause to believe the cars were subject to forfeiture.
(Emphasis added; footnote omitted.) See also United States v. Musa, 45 F.3d 922, 924 (5th Cir.1995). I would continue Florida's adherence to this view.
Assuming that the warrantless seizure was authorized, there is no doubt that the inventory search was appropriate. See Caplan v. *958 State, 531 So.2d 88 (Fla.1988); Padron v. State, 449 So.2d 811 (Fla.1984).
OVERTON, J., concurs.
NOTES
[1] The following facts are taken from the First District's opinion. White, 680 So.2d at 551-55.
[2] The dates of the alleged prior illegal activities were July 26, 1993, and August 4 and 7, 1993. We commend the State's candor in providing these dates during oral argument. As both parties noted at oral argument, the record is unclear as to the actual dates. The State noted that these dates are contained in White's motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.
[3] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amend. IV, U.S. Const. In 1982, article I, section 12 of the Florida Constitution was amended to add what has become known as the conformity clause because "we are bound to follow the interpretations of the United States Supreme Court with relation to the fourth amendment and provide no greater protection than those interpretations." Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988); see Soca v. State, 673 So.2d 24, 27 (Fla.), cert. denied, ___ U.S. ___, 117 S.Ct. 273, 136 L.Ed.2d 196 (1996).
[4] Because Lasanta contains a comprehensive and reasoned treatment of this issue, we quote from the Second Circuit's opinion at length:

A threshold question presented here is whether the government's seizure of the car, without a warrant, as a civil forfeiture, was authorized. The forfeiture statute, 21 U.S.C. § 881, gives power to the attorney general to seize for forfeiture, inter alia, a vehicle that is used to facilitate a narcotics transaction. In carrying out such a statutorily authorized seizure, however, agents of the attorney general must also obey the constitution, particularly the fourth amendment's command that there be no unreasonable seizures.
....
We find no language in the fourth amendment suggesting that the right of the people to be secure in their "persons, houses, papers, and effects" applies to all searches and seizures except civil-forfeiture seizures in drug cases. U.S. Const. amend. IV. We reject out of hand the government's argument that congress can conclusively determine the reasonableness of these warrantless seizures, and thereby eliminate the judiciary's role in that task of constitutional construction. See U.S. Const. art. VI, cl. 2. While congress may have intended civil forfeiture to be a "powerful weapon in the war on drugs", United States v. 141st Street Corp. by Hersh, 911 F.2d 870, 878 (2d Cir.1990) (noting statute's legislative history), cert. denied, 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991), it would, indeed, be a Pyrrhic victory for the country, if the government's relentless and imaginative use of that weapon were to leave the constitution itself a casualty.
....
To be valid, therefore, this warrantless seizure must meet one of the recognized exceptions to the fourth amendment's warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). Surely the government cannot argue that the canister, tucked underneath the driver's seat, was found in the plain view of an investigative officer in a place she was entitled to be. See, e.g., Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (explaining the elements of a plainview seizure). Nor does the government claim that the search was incident to Cardona's arrest, which occurred on the doorstep of Cardona's home. See, e.g., Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2039-40, 23 L.Ed.2d 685 (1969) (police may search arrestee's person and area within his immediate control incident to arrest). The substantial distance between the site of Cardona's arrest and the vehicle in the driveway forecloses any question of the agents' need to search the vehicle for weapons to ensure their safety during the arrest. Chimel, 395 U.S. at 763, 89 S.Ct. at 2040 (noting that safety animates this seizure rationale).
The government does not even suggest that exigent circumstances might justify its warrantless seizure of the vehicle. See, e.g., Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (outlining the automobile exception to the warrant requirement); Carroll v. United States, 267 U.S. 132, 146, 45 S.Ct. 280, 282, 69 L.Ed. 543 (1925) (noting rationale of automobile exception). Investigative agents could have held no realistic concern that the car, parked not in a public thoroughfare, but in Cardona's private driveway, might be removed and any evidence within it destroyed in the time a warrant could be obtained. Cardona was not operating the vehicle, nor was he in it or even next to it; when the agents knocked on his door to arrest him, he was inside his house, asleep.
Nor was it impractical for the agents to obtain a warrant to seize Cardona's car. See, e.g., United States v. Paroutian, 299 F.2d 486, 488 (2d Cir.1962) (search upheld when exceptional circumstances rendered it impractical to secure warrant). Previous surveillance had made agents aware of the vehicle's presence, thus enabling them to have requested and obtained a search warrant during either of their two attempts to secure a warrant to arrest Cardona. Even if the agents had been surprised by the presence of the limousine, and even if they harbored probable cause to suspect it contained evidence of narcotics-related activity, they still could have posted an agent to remain with the vehicle, and then secured a search warrant.
Id. at 1303-06. This reasoning is sound and speaks for itself.
[5] A young man who had just left the motor home only moments before told agents of the Drug Enforcement Administration that he had received marijuana from the suspect while in the motor home. Carney, 471 U.S. at 388, 105 S.Ct. at 2067.
[6] See also Pennsylvania v. Labron, 518 U.S. 938, 940-41, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (reaffirming Carney in reasoning that if a car "is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more"); California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991) (holding that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained").
[7] As Chief Justice Kogan recently reminded us, the genius of our federal and state constitutions is that they define basic rights that neither the legislative nor executive branches can modify. Krischer v. McIver, 697 So.2d 97, 112 (Fla.1997) (Kogan, C.J., dissenting). These remarkable documents fenced off from the "ordinary political process" these rights guaranteed all Americans by ensuring they "could not be repealed by a mere majority vote of legislators nor ... alter[ed] through any process except constitutional amendment." Id. at 112-13.
[8] As Judge Wolf correctly observed in his dissent below, the Fourth Amendment mandates that absent exigent circumstances, police must secure a warrant for the search and seizure of an automobile. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Indeed, Coolidge's holding remains good law to the extent that "no amount of probable cause can justify a warrantless search or seizure absent `exigent circumstances.'" Id. at 468, 91 S.Ct. at 2039. Moreover, in the case that overruled Coolidge in part, Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Supreme Court not only reaffirmed Coolidge's essential holding but also noted that it had extended "the same rule to the arrest of a person in his home." Id. at 137 n. 7, 110 S.Ct. at 2308 n. 7. Therefore, since no exigent circumstances existed in this case, the warrantless seizure of White's car was unconstitutional. See Coolidge, 403 U.S. at 454-55, 91 S.Ct. at 2031-32 (reaffirming rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well-delineated exceptions ") (emphasis added). Even though automobiles are afforded lesser Fourth Amendment protection, there is still a strong presumption against warrantless searches and seizures of a citizen's property by the government, absent exigent circumstances. See Coolidge, 403 U.S. at 468, 91 S.Ct. at 2039 (reiterating that "even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure"). Coolidge's requirement that a "plain view" seizure must also be "inadvertent" was overruled in Horton, 496 U.S. at 140, 110 S.Ct at 2310. Minus that incidental reasoning, Coolidge remains good law.